UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRAJECTORY HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CITY OF PAGEDALE, | ) | |
| | ) | **PLAINTIFF DEMANDS** |
| GLORIA WILLIAMS, | ) | **JURY TRIAL** |
| in her individual capacity for damages, and | ) | |
| in her official capacity for equitable relief, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**
**1983: UNREASONABLE SEIZURE OF REAL PROPERTY,**
**RETALIATION FOR EXERCISE OF RIGHT OF ACCESS TO THE COURTS, AND**
**VIOLATION OF PROCEDURAL DUE PROCESS - MONELL LIABILITY, AND**
**DECLARATORY AND INJUNCTIVE RELIEF, AND**
**STATE LAW: SUNSHINE ACT VIOLATION**

Plaintiff Trajectory Holdings, LLC, by counsel W. Bevis Schock and Erich Vieth, states

as its Complaint under 42 U.S.C. 1983 for unreasonable seizure of real property, retaliation for

exercise of right of access to the courts, violation of right to procedural due process – *Monell*

liability, and claim for declaratory and injunctive relief, and claim under state law for Sunshine

Act violation:

**INTRODUCTION**

1.     Trajectory Holdings purchased residential property in Pagedale.  Trajectory rented the

property to a Tenant.  The Tenant failed to pay the rent and Trajectory filed suit for rent

and possession.  During the suit a Pagedale Alderman, Defendant Williams, who is also

the "Building Commissioner" telephoned a representative of Trajectory and said that if

Trajectory sued the Tenant out, Pagedale would condemn the property.  Even so,

1

Trajectory proceeded with the suit.  Tenant vacated.  Defendants condemned the property.  The property is in all material ways in good condition.  Pagedale gave no due process.  Defendant ignored Sunshine Act requests.

## PRELIMINARY ALLEGATIONS

### Parties

2.  Plaintiff Trajectory Holdings, LLC is a properly existing State of Washington limited liability company properly registered to do business in the State of Missouri.

3.  The sole owners and only authorized representatives of Trajectory are Tracy Gregg and Anthony Douglas.  Gregg and Douglas are residents of Auburn, Washington.

4.  Defendant City of Pagedale is properly incorporated municipality in St. Louis County, Missouri.

5.  Defendant Gloria Williams is an individual.

6.  Plaintiff sues Williams in her individual capacity for damages and in her official capacity for declaratory and injunctive relief.

### Jurisdiction and Venue

7.  Plaintiff brings its federal claims pursuant to 42 U.S.C. § 1983 and § 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

8.  This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 and 28 U.S.C. §§ 2201-2202, with 42 U.S.C. § 1983 and 42 U.S.C. § 1988 being the statutes at issue.

9.  This court has supplemental jurisdiction over Plaintiff's Sunshine Act claim pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 because the relevant events

        occurred in St. Louis County, Missouri, which is within the Eastern Division of this

        Court.

### Color of State Law

11.     At all relevant times, both Defendants acted under color of state law.  Particularly, at all

        relevant times, both Defendants acted under color of the laws, statutes, ordinances,

        regulations, policies, customs and usages of the State of Missouri.

### Jury Demand

12.     Plaintiff demands a jury trial on all factual issues.

### FACTS

**Purchase of Property, Lease to Tenant, Non-Payment of Rent, Suit, Tenant Vacates**

13.     On January 26, 2023 Trajectory purchased the approximately .1 acre real property at

        7348 Grand Drive in the City of Pagedale, Missouri  63133 ("the property").

14.     The property is in a residential neighborhood, improved with an approximately 810-930

        square foot, three bedroom brick home.

15.     Trajectory's intent was to repair and then rent out the property, and thus to earn a profit.

16.     On January 27, 2023, Trajectory had entered into a management agreement with Renter's

        Warehouse pursuant to which Renter's Warehouse would manage the property, including

        handling repairs, recommending a lease rate, finding a tenant, handling the lease

        negotiations, collecting the rent, and engaging in other reasonable acts in connection with

        the property.

17.     Promptly after Trajectory purchased the property, Renter's Warehouse arranged for

        reasonable repairs to be performed by Arriaga Construction at a cost of $2,655.00.  Those

3

repairs included:

    a.      Scrape and paint fascia and soffit around exterior of house, $1,200.00

    b.      Install washing machine drainpipe attached basement sewer drain, $100.00

    c.      Repair broken windowpane in kitchen, $300.00.

    d.      Repair and replace torn or missing window screens, $100.00.

    e.       Install fire block under kitchen sink, $50.00.

    f.      Deep clean entire interior of house including appliances and basement, $300.00.

    g.      Repair bullet hole on roof by replacing shingles as needed, $100.00.

    h.      Snake basement drain, $25.00.

    i.      Reattach closet sliding doors in 2 bedrooms, $20.00.

    j.      Clean gutters, $150.00

    k.      Seal driveway, $150.00

    l.      Install new smoke detectors and carbon monoxide detectors as needed per code, $150.00.

18.    On February 16, 2023, Renter's Warehouse, on Trajectory's behalf, applied for an occupancy permit.

19.    On February 24, 2023, Pagedale Inspector Pamela Nichols inspected the property.

20.    Starting four days later, on February 28, 2024, Trajectory began calling and writing every day for a copy of the inspection report.

21.    On March 9, 2023, Pagedale Inspector Nichols issued to Renter's Warehouse a notice that the property was "Not Approved for Occupancy."  The Notice stated numerous deficiencies, almost all of them cosmetic in nature.

22.    On March 10, 2023, a representative of Renter's Warehouse visited City Hall and

received a copy of the inspection report.

23.    Eleven days later, on March 21, 2023, Inspector Nichols delivered to Renter's Warehouse the photos from the inspection.

24.    Renter's Warehouse contacted contractors regarding the deficiencies, and they all indicated that the demanded repairs were generally cosmetic in nature.

25.    On April 11, 2023, a representative of Renter's Warehouse wrote to the Mayor of Pagedale outlining the above facts.

26.    On May 18, 2024, Inspector Nichols issued another inspection report which indicated that some items remained, including handrail replacement, cracks in the driveway, and deteriorated wood on basement stairs.

27.    Plaintiff completed the repair of all three of those items.

28.    On Thursday, April 13, 2023, at 6:30 p.m., Trajectory's authorized representatives, Tracy Gregg and Anthony Douglas, had zoomed into a Pagedale City Council meeting and complained about Pagedale not having issued the occupancy permit.

29.    Douglas first told the Council about Trajectory's goals in St. Louis.  Douglas then expressed concerns about the process of inspections and approval of an occupancy permit.  As he began to state their concerns, he was interrupted by the council members. He had to fight to make his points.

30.    Douglas then asked the following questions.

    a.    What codes were specifically violated on each of her call outs?

    b.    What was the process that was used to inspect each property?

    c.    What was the formal education and qualifications of the inspector?

    d.    What was the process to appeal her decision?

31.     During the process of stating the questions he was further interrupted by both the inspector and some of the council members.

32.     The inspector called Gregg and Douglas "slum lords" and made them seem as if they had come to St. Louis to take advantage of renters.

33.     City officials stated that the inspector didn't have to state which codes were being violated and that her qualifications were sealed and not open for discussion.

34.     On May 12, 2023, Pagedale issued Trajectory an occupancy permit for the property.

35.     On May 13, 2024, Renter's Warehouse delivered to Trajectory a "rental analysis report" with a recommendation to lease the property for $1,100.00 per month.

36.     Renter's Warehouse found a prospective tenant, Dana Carroll, and Carroll agreed to rent the property at that rate, (plus an $11.00 monthly service fee).

37.     On July 14, 2023, Trajectory, through the signature of its authorized representative, Tracy Gregg, signed the lease.

38.     On that date Carroll paid a security deposit of $1,600.00 plus an initial "lease processing fee" of $199.00, for a total of $1,799.00.

39.     Renter's warehouse took the first month's $1,100.00 in rent for their fee, plus $99.00 for the monthly service fee, and kept $400.00 in reserve for any needed future repairs

40.     On August 1, 2023, August rent came due in the amount of $1,111.00.

41.     Carroll did not pay the August rent.

42.     On August 15, 2023, and again on August 23, 2023, Renter's Warehouse sent Carroll email reminders that rent was due.

43.     On September 1, 2023, Carroll still owed the August rent, but by then September rent had also come due, for a total then due of $2,222.00.

44.     Carroll continued to make no payments.

45.     On September 20, 2023, Renter's Warehouse, on behalf of Trajectory, filed suit in St. Louis County against Carroll for rent and possession, 23SL-AC26095.

46.     On November 6, 2023, Carroll was personally served.

47.     Carroll obtained counsel.

48.     On November 29, 2023, the parties to that suit entered into a settlement pursuant to which Carroll would vacate the premises, and judgment for back rent would be stayed pending Carroll meeting a payments schedule.

49.     The next day, November 30, 2023, Carroll vacated the property.

50.     When Carroll vacated the property, she left it broom clean.

**Complaint, Repairs, Phone Call: Threat of Condemnation and Then Actual Condemnation**

51.     The first week of September, out of concern for Carroll's well-being, a representative of Renter's Warehouse had gone to the property for a welfare check.

52.     During the welfare check that representative spoke to Carroll.  She complained of the following conditions:

a.      Mildew and for mold on basement foundation walls,

b.      Gutters not cleaned out,

c.      Bird and hornet nests in fascia at front and rear of house,

d.      Gutter extension hoses not properly attached to gutter downspouts,

e.      Insufficient weather stripping around front and back doors,

f.      Rainwater getting into the living room and kitchen,

g.      Insufficient caulk on exterior of front and back door jambs, resulting in foam insulation being visible, and

h.      Due to missing strike plates front and back door locks not properly latching.

53.    Renter's Warehouse, on behalf of Trajectory, sent repairmen from Arriaga Construction to the property and those repairmen fixed everything on that list.

54.    The cost to Plaintiffs for that work was $600.00.

55.    On October 16, 2023, after the eviction suit was filed but before Carroll had been served, Pagedale then Alderman (now also Mayor Pro Tempore) Faye Millett and City Building Inspector Pamela Nichols together made a telephone call to Trajectory's representative, Tracy Gregg.  Nichols initiated the call from her phone.

56.    Millett and Nichols told Gregg that Carroll had complained to them that:

a.      Trajectory had stolen all her money,

b.      There were multiple repair issues in the home, and

c.      She was being evicted.

57.    Gregg explained that:

a.      Trajectory had received an occupancy permit in May so the property must have been satisfactory then,

b.      Trajectory had fixed the repair issues about which Carroll had complained, and

c.      Carroll had not paid rent.

58.    Millett told Gregg that she was a slum lord.

59.    Gregg ignored that slur and said that the repairs had been done properly.

60.    Millett then told Gregg that Trajectory would ruin Carroll's life if the company evicted her.

61.    Millett then told Gregg that if Trajectory proceeded with the eviction, that Pagedale would condemn the property in order to prevent them from collecting any back rent.

8

62.   Millett further demanded that Trajectory let Carroll out of the lease and return to Carroll her rent money.

63.   Gregg then asked how Pagedale could condemn the property if it had just been approved for an occupancy permit in May.

64.   Nichols responded that she had only issued the occupancy permit after the Mayor had instructed her to do so after Gregg had zoomed into the City council meeting.

65.   Nichols then stated, "how dare you charge $1,100 a month for rent for our home and the Tenant expected the Taj Mahal for that price."

66.   Pagedale has no legal authority to control the amount of rent any particular Landlord charges any particular Tenant.

67.   Gregg responded that Carroll had done a walk-through before signing and knew what she was getting.

68.   Nichols stated that "they" wanted Trajectory to let Carroll out of the lease and return all Carroll had paid.

69.   Nichols then restated the same threat to Trajectory about condemnation stating that if Trajectory did not comply with those demands "they" would condemn the property.

70.   Gregg again said that the Tenant had not paid rent, that she suspected this was something Carroll had done before, and Trajectory would proceed with the eviction.

71.   On or about November 27, 2023, after Carroll had been served but before the rent and possession suit had been settled, a pre-printed notice was affixed to the front door of the property stating that the property had been "CONDEMNED", Ex. 1.

72.   The full language of the notice is:

CONDEMNED

BY THE ORDER OF THE

BUILDING COMMISSIONER

CITY OF PAGEDALE

This structure has been found to be a public nuisance by the Director of Planning and Code Enforcement of the City of Pagedale.  It also reasonably appears that this building or structure is an immediate danger to the health, safety or welfare of persons thereabout or therein.  This notice is to remain on this structure until it is brought into compliance with the Ordinances of the City of Pagedale, Missouri.  It is unlawful to remove this notice until such compliance has occurred.

Date                    November 21, 2023

Street & Number:        7348 Grand

Owner:                  Trajectory Holdings, LLC

G Williams
Building Commissioner

73.     On inference, one individual person, Gloria Williams, was serving as both the Alderman and the Building Commissioner.  Plaintiff is uncertain of whether she held both positions at the same time.

74.     As stated in more detail below, on January 23, 2024, undersigned counsel received an email from the Pagedale City Attorney stating that the Condemnation Order had been lifted.

75.     On or about January 25, 2024, the City removed the Condemnation Order from the front door of the house.  (The "condemnation period" will hereafter be referred to as November 27, 2023, to January 25, 2024, which is 59 days).

**FOURTH AMENDMENT SEIZURE**

76.     Trajectory has a property right in 7348 Grand as defined by state law,[1] which includes the right to rent the property.[2]

---

[1] *Butner v. United States*, 440 U.S. 48, 55 (1979).
[2] *Blackwell Printing Co. v. Blackwell-Wielandy Co.*, 440 S.W.2d 433, 436 (Mo. 1969).

77.   The Condemnation Order was meaningful interference with Trajectory's possessory interests in the property.[3]

78.   As such, the Condemnation Order was a Fourth Amendment seizure.[4]

79.   The seizure of the property was unreasonable and therefore violated Trajectory's Fourth Amendment right to be free of unreasonable seizures of one's property.[5]

## RETALIATION FOR SUING OUT CARROLL

80.   Trajectory has no knowledge of any other reason for the condemnation of the property except for retaliation for Trajectory's rent and possession suit against Carroll.

81.   Trajectory's initiating of the rent and possession lawsuit was the determining factor in Williams' condemning the property and Williams would not have done so but for Trajectory filing the lawsuit.

82.   Officials of the City of Pagedale went so far as to state that they would retaliate if Trajectory sued Carroll out.

83.   Williams' issuance of the condemnation order was in retaliation for Trajectory's accessing the court to sue out Carroll for non-payment of rent and therefore violated the First Amendment right of access to the courts.[6]

## PROCEDURAL DUE PROCESS

### No Notice of Deficiencies, Right to Cure, or Hearing, Violation of Due Process

84.   The condemnation order states that the reason for the condemnation is that the property is a "public nuisance" and a "danger to health, safety or welfare of persons thereabout or

---

[3] *Soldal v. Cook County, Illinois*, 506 U.S. 56, 61 (1984).
[4] *Samuels v. Meriwether*, 94 F.3d 1163, 1167 (8th Cir. 1996).
[5] *Soldal v. Cook County, Illinois*, 506 U.S. 56, 61 (1984).
[6] *Blair v. Terry*, No. 6:15-03532-CV-S-RK, 2017 WL 6273084, at *2 (W.D. Mo. Dec. 8, 2017).

therein."

85.     The Pagedale City Code, starting at § 215.120, has provisions related to nuisance activity. Among the activities which constitute a "nuisance" are Peace Disturbance, lewd behavior, prostitution, noise, illegal use of firearms.

86.     The code states that if the Chief of Police determines that a nuisance is occurring at the property he should provide an initial notice, a final notice, and then a hearing, and if at the hearing the Chief of Police concludes that the activity is a public nuisance, the Chief may prohibit occupancy, with a mailed notice to the property owner.

87.     The Code further provides procedures for the conduct of the hearing.

88.     The St. Louis County assessor's site lists the correct mailing address for Trajectory as the property owner.

89.     Trajectory has never received notice from the Chief of Police that the property is a public nuisance, or that there is an upcoming public hearing.

90.     Renter's Warehouse has also never received any such notice.

91.     Case.net reveals no legal action against Carroll for any conduct at the property.

92.     At no time since Trajectory received its occupancy permit in May 2023 has Trajectory had any knowledge of any activity at the property that would constitute a nuisance under the Pagedale City Code.

93.     On inference, there has never been any conduct at the property which would be considered a public nuisance under the Pagedale Ordinances.

94.     On inference, there has never been notice from the Chief of Police of a nuisance or any hearing whatsoever.

95.     On inference, the Chief of Police has had no involvement whatsoever in the

condemnation of the property.

96.  During the time period starting when Trajectory received an occupancy permit in May of

2023 and continuing to the date of this filing, Trajectory has never received from

Pagedale:

a.  A written notice of deficiencies in the structure of the building or any other issue

related to the building,

b.  An opportunity to cure any deficiencies, or

c.  Notice of any right to a prompt hearing regarding the building itself.

97.  At no time since Trajectory received its occupancy permit in May 2023 has Trajectory

had any knowledge of any issues with the building's structure or other physical condition

that would justify condemnation.

98.  The failures to deliver a notice of the alleged public nuisance and or deficiencies to the

building, to provide an opportunity to cure, and/or a right to a prompt hearing are all

violations of Trajectory's right to procedural due process under the Fifth and Fourteenth

Amendments.

**Pagedale Building Codes and Regulations**

99.  Chapter 500 of the Pagedale Ordinances relates to "Building Codes and Regulations."

100.  At 500.010 Pagedale adopts the St. Louis County Building Code.

101.  At 500.030 Pagedale delegates to St. Louis County, through its Department of Public

Works, the enforcement of the Pagedale Building Code.

102.  In the event of a violation, under 500.034 in the event of a violation, the County is to

notify the City of the violation for prosecution.

103.  Trajectory has no knowledge of any action by St. Louis County regarding the property.

**Unilateral Authority of Building Commissioner to Condemn Property
Policy to Deny Due Process**

104.    The office of Building Commissioner is created at 500.040, with the holder of the

position to be appointed by the Mayor, subject to approval of the Board of Alderpersons.

105.    Under the Pagedale City Code § 215.200:

> Nothing in this Article shall be interpreted to supersede or limit in any manner the
> authority of the Building Commissioner to condemn property under the authority
> of any provision of the City of Pagedale.

106.    Those Code sections have no standards or a right to a hearing.

107.    That Code section thus allows the Building Commissioner, Defendant Williams to

condemn property unilaterally.

108.    Williams held a distinct office with unique powers and had discretion in the exercise of

particular functions.

109.    Williams did not have to answer to anyone when condemning the house and was thus the

ultimate authority.

110.    When Williams acted to condemn the house, she made a deliberate choice of a guiding

principle and procedure to deny Plaintiff the right to procedural due process in retaliation

for Plaintiffs' exercise of right to access to the courts, and she chose a course from among

various alternatives.

111.    The acts of Building Commissioner Williams thus represented official policy.[7]

112.    In the alternative Williams had authority to set policy in her role as alderman.

113.    Without standards or a right to a hearing any action by the Building Commissioner to

condemn a building, as occurred here, violates the property owner's right to procedural

due process.

---

[7] *Felts v. Green*, 91 F.4th 938 (8th Cir. 2024)

114.   In the alternative, if the occupancy permit was only issued because the Mayor told the Building Commissioner to issue it and the property at that time still needed repairs, and with such proper repairs the property could have been repaired to meet code before the lease to Carroll, then the property would have been compliant at all relevant times, and to the extent that the condemnation order relates to issues with the structure of the building or other physical issues, the condemnation order would have never been issued and Trajectory would not have suffered its damages from the condemnation order.

115.   If the statements of the above paragraph are correct, it is the policy of the City of Pagedale, through its policymaker, the Mayor, to issue occupancy permits prematurely, thereby setting up property owners for later failure to meet Code and resulting financial loss.  Such action violates the property owner's right to procedural due process.

116.   In the alternative, and on inference, because the Condemnation notice is signed by Defendant Williams who is both an Alderman and the City's Building Commissioner, the process of condemning property without following the City's code is a policy of the City of Pagedale.

117.   The various policies and actions related thereto as described in the above paragraphs deny procedural due process and were the moving force behind Trajectory's damages.[8]

118.   Pagedale is liable to Plaintiff under *Monell*[9] for the damages resulting from those various policies and actions because it is the policies themselves which denied procedural due process.

**DAMAGES**

---

[8] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), *Board of Comm'rs v. Brown*, 520 U.S. 397, 400 (1997).
[9] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

15

**Compensatory Damages**

119.  At the fair market value of $1,100 per month Trajectory lost potential rent during the condemnation period at a value of $2,127.86, (based on 59 of 61 possible days of rent).

120.  At a minimum it is reasonable to presume that Trajectory would have found a new tenant within a few weeks of when Carroll vacated and therefore Trajectory lost one month's rent at $1,100.00.

121.  During that time Trajectory lost its reasonable investment backed expectation of profit.

122.  On inference, the fact that there was a bright orange condemnation notice on the house for 59 days caused the public to be suspicious of renting and/or purchasing the property.

123.  Due to the unlawful conduct of Pagedale, Renter's Warehouse no longer does business in the City.

124.  Trajectory has therefore decided not to rent the property and has listed the property for sale.

125.  The fair market value of the property is lower than it would have been had there not been a condemnation notice on the property.  The amount of the diminution shall be determined in discovery and at trial.

**Punitive Damages Against Williams:**
**Federal Claims of Unreasonable Seizure and Retaliation**

126.  The conduct of Williams in condemning the property through seizure and engaging in retaliatory conduct was malicious or recklessly indifferent to Plaintiff's constitutional rights. [10]

127.  The purpose of punitive damages is deterrence and retribution.[11]

---

[10] 8th Cir Model Jury Instructions, 4.72.

[11] *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 432 (2001).

128.   That misconduct was unlawful and is capable of repetition, which must be deterred.[12]

129.   An award of a reasonable amount of punitive damages would bear an appropriate relationship to the harm suffered and to damages in similar cases.[13]

130.   Trajectory is entitled to punitive damages against Williams in her individual capacities for this federal claim against her:  unreasonable seizure of property and retaliation.

**Never Any Compensation or Reimbursement From Pagedale**

131.   Trajectory has received no compensation or reimbursement from Pagedale for the loss of use of its property during the condemnation period.

**DECLARATORY AND INJUNCTIVE RELIEF**

132.   With regard to Count IV, Plaintiff asks the court to declare that Defendants' acts, described above, constitute violations of the U.S. Constitution.

133.   With regard to Count IV, Plaintiff asks the court to enter an injunction prohibiting Defendants from engaging, in the future, in the conduct described above.

134.   With regard to Count IV, Plaintiff asks the court to award Plaintiff any lawful damages and reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

**SUNSHINE ACT VIOLATION**

**Informal Request for Information, Sunshine Act Request for Information, Hammer Letter**

135.   On December 12, 2023, at 2:14 undersigned counsel submitted through Alderman Gloria Williams's portal the following message:

> Dear Ms. Williams - I am an attorney and I represent Trajectory Holdings, LLC, owner of 7348 Grand.  I assume you are the same Gloria Williams who is the Building Commissioner.  If not, please redirect this to the Building Commissioner Gloria Williams.

---

[12] *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408, 416-17 (2003) (quoting *Gore,* fn. 3 *below,* 517 U.S. at 568).
[13] *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574-86 (1996).

> At the end of November, a condemnation order was posted over your signature on the building at that address.  Please provide me forthwith all reports and other documents supporting the condemnation order, and any documents stating work which needs to be done in order that you will lift the condemnation order.
>
> Thank you, Bevis Schock.  Office: 314-726-2322   Cell: 314-757-0604

136.   Undersigned counsel received no response.

137.   On December 19, 2023, under RSMo. 610.010&c, undersigned counsel submitted a

formal Sunshine Act request to the City of Pagedale, Ex. 2, seeking:

> All documents which relate to the Condemnation Order issued in November 2023 for the property at 7348 Grand Drive, Pagedale, MO  63133.
>
> All documents stating the standard for determining whether a building or house will be condemned in Pagedale.
>
> All documents whereby Gloria Williams was appointed to or assumed the position of Building Commissioner in Pagedale such that she held that post in November of 2023.

138.   Undersigned counsel received no response.

139.   On January 5, 2024, undersigned counsel sent a letter to the Mayor demanding:

> that the City either (1) explain with lawful reason why the property was condemned – so that my clients may either object or remediate, or (2) lift the condemnation.

140.   Undersigned counsel received no response.

141.   On January 22, 2024, undersigned counsel submitted a follow-up "Hammer Letter," Ex.

3, to the City of Pagedale warning the City that failure to comply would result in

substantial financial penalties to the City, including punitive damages and attorneys' fees.

142.   The deadline for that response was January 26, 2024.

143.   As stated above, the next day, on January 23, 2024, undersigned counsel received an

email from the Pagedale City Attorney stating that the Condemnation Order had been

lifted.

144.    On or about January 25, 2024, after a follow-up by undersigned counsel, the City

        removed the condemnation notice from the front door of the house.

145.    Pagedale's condemnation of the property during the condemnation period was a seizure

        of the property.

146.    Pagedale has never responded to the above-described Sunshine Act requests.

### ATTORNEYS' FEES AND COSTS

147.    In pursuit of its federal claims, Trajectory is incurring reasonable federal statutory

        attorneys' fees, taxable costs, and non-taxable costs compensable under 42 U.S.C. §

        1988.

148.    In pursuit of its Sunshine Act state law claim Trajectory is incurring reasonable state

        statutory attorneys' fees, taxable costs, and non-taxable costs compensable under RSMo.

        610.027.3 and/or 610.027.4.

### COUNT I
### FEDERAL CLAIM
### 4TH AMENDMENT SEIZURE
### AGAINST DEFENDANT WILLIAMS

149.    Plaintiff incorporates all prior paragraphs.

150.    *First*, Building Commissioner Williams condemned Trajectory's real property.

151.    *Second*, the condemnation was unreasonable because there was no condition at the

        property nor conduct which had occurred at the property to provide a lawful reason for

        the condemnation.

152.    *Third*, as a direct result, Plaintiff was damaged.

153.    The conduct of Williams in condemning the property was malicious or recklessly

indifferent to Plaintiff's constitutional rights.[14]

WHEREFORE, Plaintiff prays for judgment against Gloria Williams for compensatory and punitive damages, each in a reasonable amount, in her individual capacity only, for unreasonable seizure of Trajectory Holdings, LLC's property, and for costs and reasonable attorneys' fees under 42 U.S.C. 1988, and for such other relief as the court finds to be just, meet and reasonable.

**COUNT II**
**FEDERAL CLAIM**
**RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHT**
**OF ACCESS TO THE COURTS**
**AGAINST WILLIAMS AND CITY OF PAGEDALE**

154.   Plaintiff incorporates all prior paragraphs.

155.   *First*, Trajectory exercised its constitutional protected right to access to the courts when it filed a rent and possession suit against Carroll.

156.   *Second*, subsequent to Trajectory filing suit against Carroll, Williams issued a condemnation notice against the property.

157.   *Third*, there was no lawful reason to condemn the property,

158.   *Fourth*, Trajectory's initiating of the rent and possession lawsuit was the determining factor in Williams' condemning the property and Williams would not have done so but for Trajectory filing the lawsuit.

159.   *Fifth*, the acts of Williams represent official policy of the City of Pagedale.[15]

160.   *Sixth*, as a direct result, Plaintiff was damaged.[16]

---

[14] 8th Cir. Model Jury Instructions, 4.40, *Samuels v. Meriwether*, 94 F.3d 1163, 1167 (8th Cir. 1996), *Soldal v. Cook County, Illinois*, 506 U.S. 56, 61 (1984).
[15] *Felts v. Green*, 91 F.4th 938 (8th Cir. 2024).
[16] 8th Cir. Model Jury Instructions, 4.40, *Blair v. Terry*, No. 6:15-03532-CV-S-RK, 2017 WL 6273084, at *2 (W.D. Mo. Dec. 8, 2017).

161.    The conduct of Williams in retaliating against Trajectory for filing its rent and possession

suit was malicious or recklessly indifferent to Plaintiff's constitutional rights.

WHEREFORE, Plaintiff prays for judgment against Gloria Williams in her individual

capacity only, and against the City of Pagedale for compensatory and punitive damages

(punitives only against Williams), each in a reasonable amount, for retaliation against Trajectory

for Trajectory's engaging in access to the courts, and for costs and reasonable attorneys' fees

under 42 U.S.C. 1988, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT III
### FEDERAL CLAIM
### DENIAL OF PROCEDURAL DUE PROCESS
### AGAINST WILLIAMS AND CITY OF PAGEDALE

162.    Plaintiff incorporates all prior paragraphs.

163.    *First*, Trajectory did not receive a hearing regarding the condemnation before an

impartial decision maker at a meaningful time and in a meaningful manner,[17] and

164.    *Second*, as a direct result, Plaintiff was damaged.

WHEREFORE, Plaintiff prays for judgment against Gloria Williams in her individual

capacity only, and against the City of Pagedale for compensatory and punitive damages

(punitives only against Williams), each in a reasonable amount, for violation of right to

procedural due process, and for costs and reasonable attorneys' fees under 42 U.S.C. 1988, and

for such other relief as the court finds to be just, meet and reasonable.

### COUNT IV
### FEDERAL CLAIM
### DECLARATORY AND INJUNCTIVE RELIEF

---

[17] 8th Cir. Model Jury Instructions, 4.40.  In general, procedural due process requires that a hearing before an impartial decision maker be provided at a meaningful time, and in a meaningful manner, prior to a governmental decision which deprives individuals of a liberty or property interest.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), *Samuels v. Meriwether*, 94 F.3d 1163, 1166 (8th Cir. 1996)

**AGAINST WILLIAMS AND CITY OF PAGEDALE**

165.    Plaintiff incorporates all prior paragraphs.

166.    On inference, the violation of Plaintiff's rights will continue without the intervention of this Court.

167.    Plaintiff has suffered and will continue to suffer irreparable harm.

WHEREFORE, Plaintiff prays the court to declare the conduct of Gloria Williams in her official capacity, and the City of Pagedale to have been unconstitutional, to enter an injunction prohibiting them from condemning property without due process of law, and for costs and reasonable attorneys' fees under 42 U.S.C. 1988, and for such other relief as the court finds to be just, meet and reasonable.

**COUNT V**
**STATE LAW CLAIM**
**SUNSHINE ACT VIOLATION**
**AGAINST CITY OF PAGEDALE**

168.    Plaintiff incorporates all prior paragraphs.

169.    *First*, Plaintiff, acting through its attorney, made a lawful Sunshine Act request to Defendant City of Pagedale regarding the condemnation of the property.

170.    *Second*, Defendant City of Pagedale did not respond to the Sunshine Act request,

171.    *Third*, Plaintiff acting through its attorney, sent a hammer letter making City of Pagedale officials aware of their duty to respond to a proper Sunshine Act request,

172.    In the alternative, *Fourth,* in failing to respond City of Pagedale knowingly violated the Sunshine Act,

173.    In the alternative, *Fourth*, in failing to respond City of Pagedale purposefully violated the Sunshine Act,

174.    In the alternative, *Fifth*, for this knowing violation Plaintiff is entitled to a civil penalty of

$1,000,00 and the court may order attorneys' fees and costs.

175.   In the alternative, *Fifth*, for this purposeful violation Plaintiff is entitled to a civil penalty of $5,000,00 plus attorneys' fees and costs.

176.   Although the meaning of the terms "knowing" and "purposeful" is a question of law, "[w]hether the conduct of the city brings it within the scope of the statutory definitions of knowing and purposeful conduct is a question of fact.[18]

WHEREFORE Plaintiff prays for judgment in her favor, declaring that records requested by her, through counsel, are open records under the Missouri Sunshine Act, finding the City of Pagedale purposefully, or at least knowingly violated the Sunshine Law, and ordering City of Pagedale to pay Plaintiff's attorneys' fees and costs, along with a civil penalty for purposeful or knowing conduct, and such other and further relief as the Court deems just and proper.

Respectfully Submitted,

   /s/ W. Bevis Schock   .                 /s/ Erich Vieth         .
W. Bevis Schock, 32551MO          Erich Vieth, 29850 MO
7777 Bonhomme Ave., Ste. 1300     20 South Sarah Street
St. Louis, MO  63105              St. Louis, MO 63108
wbschock@schocklaw.com            erichviethattorney@gmail.com
Voice:  314-726-2322              Voice: (314) 604-3454
Fax:    314-721-1698             Fax:    (314) 310-1181
Attorney for Plaintiff            Attorney for Plaintiff

---

[18] *Wyrick v. Henry*, 592 S.W.3d 47, 58 (Mo. Ct. App. 2019)